UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                  :
UNITED STATES OF AMERICA                          :
                                                  :            S1 08 CR. 792  (GEL)
        -v.-                                      :
                                                  :            **OPINION AND ORDER**
VICTOR CARRANZA,                                  :
                                                  :
                          Defendant.              :
                                                  :
------------------------------------------------------------x

Chi T. Steve Kwok, Assistant United States Attorney
(Lev L. Dassin, Acting United States Attorney for the
Southern District of New York), New York, NY, for
the Government.

Edward V. Edens, Naperville, IL, for defendant.


GERARD E. LYNCH, District Judge:

        Defendant Victor Carranza moves to suppress evidence obtained in a search incident to

his arrest, arguing that the arrest was unlawful.  The motion will be denied.

        On October 1, 2008, a grand jury indicted Carranza along with four other defendants,

charging them with conspiracy to distribute and possess with intent to distribute more than five

kilograms of cocaine.  Carranza has since submitted to the Court a motion "to quash the arrest

and suppress from introduction into evidence the dire[c]t and indirect products of said arrest."

(Mot. 1.)  No affidavit or other sworn statement from Carranza or anyone else with knowledge of

the facts accompanied the motion.  Rather, Carranza's attorney set forth a number of mostly

conclusory assertions of fact and law "[i]n sport [sic]" of the motion.  On February 23, 2009, the

Government responded to the motion with a letter-brief, accompanied by a sworn complaint filed

by a Special Agent of the Drug Enforcement Administration ("DEA") at the time of Carranza's

arrest, and a further declaration under penalty of perjury, from another DEA agent, setting forth additional facts.  Carranza has not replied to the Government's response in any way, and has not otherwise contested the facts set forth by the Government's affidavits.  In the absence of any admissible evidence whatsoever proffered by the defendant, defendant has not raised a contested issue of material fact and there is thus no need for a hearing.  See, e.g., United States v. Noble, No. 07 Cr. 284, 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008).  Accordingly, the Court will analyze the legality of the arrest and subsequent search on the basis of the facts set forth in the Government's evidentiary submissions.

## BACKGROUND

The chain of events leading to Carranza's arrest began on August 13, 2008, with the traffic stop in Indiana of a truck driven by co-defendant Jose Parada, which led to the discovery of approximately 30 kilograms of cocaine packed in two black duffel bags amidst other cargo in the truck.  Parada informed law enforcement agents that he had been given the cocaine in Phoenix with instructions to deliver it to the New York area.  He also informed them that he had been given a telephone number for a cellphone to communicate with the person who was to receive the cocaine in New York.

Early in the morning of August 14, Parada, at the direction of DEA agents, placed a call, monitored by the agents with his consent, to the designated cellphone number, and advised the person who answered the phone that he would be late arriving to New York.  The user of the cellphone told Parada that the delivery would have to be made the next morning, August 15, between 4:00 and 5:00 a.m.  That evening, Parada received a call from the same cellphone number instructing him to proceed to a particular location near a highway exit in the Bronx at the

agreed-upon time.

On the morning of August 15, Parada parked his truck at the assigned location and awaited further developments.  He received two calls from the cellphone user advising that the latter was in the area and that he should look for a black car and a red minivan.  A DEA agent surveilling the scene then saw a black car, driven by co-defendant Raphael Martinez, pull up to Parada's truck, and further saw Parada transfer a duffel bag into the trunk of the car.  A red minivan driven by co-defendant Luis Basora then arrived on the scene.  After a conversation between Parada, Martinez, and Basora, the agent observed the black car and the red minivan drive off, followed by a green minivan.  Shortly after the cars departed, Parada, acting on the instructions of the agents, called the designated cellphone, advised that he had mistakenly delivered the wrong bag, and asked everyone to return to his truck.

Both the red and the green minivans returned to the truck's location.  At that time, agents stopped both vehicles.  A cellphone recovered from Basora, the driver of the red minivan, was ringing, and the name "Martinez" appeared on its screen.  Meanwhile, the agents who had stopped the green minivan confronted its occupants, Carranza and co-defendant Andres Pena-Hernandez.  The agents had Parada make another call to the cellphone number of the intended recipient of the cocaine.  A cellphone in the passenger seat of the green minivan where Carranza had been sitting subsequently began to ring, and its screen lit up with Parada's number.  Shortly thereafter, the black car also returned to the scene of the transaction.  It was stopped and Martinez was also arrested.

Various items, including a total of six cellphones, were seized from the green minivan.  Carranza was transported to a DEA office, advised of his rights, and questioned.  He made a

3

number of statements that the Government will seek to introduce at trial.

## DISCUSSION

Carranza argues that all of the fruits of his arrest, including physical evidence and statements, should be suppressed because he was arrested without probable cause.  The argument is without merit.

Probable cause exists "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested."  United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990).  The information known to the officers amply met this standard and justified Carranza's arrest.

Here, there was not merely probable cause, but a certainty that a crime was being committed.  The agents knew that Parada's truck contained tens of kilograms of cocaine destined for delivery to the New York area.  Parada, a participant in the offense, had informed them that the delivery was to be made to a person who could be contacted at a particular cellphone number, and agents had observed and recorded Parada making a call to that cellphone, and receiving calls from that phone, to arrange the rendezvous.  In actions characteristic of surreptitious dealers in contraband, the cellphone user declined to state the location of the meeting until the evening before the meeting would take place, and the delivery was scheduled to take place before 5:00 a.m. at a location near a highway off-ramp.

The question before the Court is whether there was probable cause to believe that Carranza was culpably involved in that crime.  Although the person giving instructions to Parada

4

over the cellphone instructed him to look out only for a black car and a red minivan (which did

in fact arrive, and participated in the transfer of the bag supposedly containing drugs), the agents

conducting surveillance also observed highly suspicious activity on the part of the green minivan

in which Carranza was a passenger.  The green minivan was observed in the area of the transfer

and left the scene following the vehicles that were clearly implicated in the scheme.[1]   The agents

did not interfere with the vehicle based on this observation alone, however, and the Court

assumes – without deciding – that this observation was insufficient to warrant a stop of the

vehicle.  Instead, Parada was instructed to call the cellphone user and ask that everyone return to

the scene because the wrong bag had been delivered.  Any question about whether the green van

was merely coincidentally in the area dissipated when the green van returned to the scene of the

transaction along with the other vehicles involved in the transaction.

      At a minimum, this behavior gave the officers a "reasonable suspicion" warranting a stop

of the vehicle and inquiry of its driver and passenger.  See Terry v. Ohio, 392 U.S. 1, 27 (1968).

The presence of the vehicle in the general vicinity of the carefully-selected location of a

surreptitious delivery of drugs, and its departure at the same time and along the same route as the

other suspects' cars, may have been merely coincidental, but its abrupt reversal of direction, and

its return to the scene in virtual caravan with the known participants in the narcotics delivery at

Parada's request amply warranted further inquiry.  As the Second Circuit held in United States v.

Jackson, 652 F.2d 244, 248 (2d Cir. 1981), "[t]he Fourth Amendment does not require a

---

     [1] The fact that the cellphone user had not instructed Parada to watch out for a green
minivan is immaterial.  Experienced narcotics enforcement agents – and even experienced judges
– are familiar with the common practice of drug dealers to have a back-up team surveilling or
supervising a narcotics transfer of the type that occurred here.

policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be . . . the essence of good police work."

The "good police work" here continued. The initial interference with Carranza's liberty was restricted to that permitted on reasonable suspicion: the car was stopped, and the occupants ordered out. See Brendlin v. California, 127 S. Ct. 2400, 2407 (2007) (passenger may be ordered out of the car during a lawful vehicle stop without additional evidence that he presents a danger); Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977) (same). Rather than interfere further with Carranza's freedom on the evidence already obtained, the agents instructed Parada to make yet another call to the cellphone user's number. Once the officers observed the cellphone on Carranza's seat ringing in response to this call, and observed Parada's number displayed on that phone's screen, the circle was complete. Carranza was thereby identified either as the cellphone user himself, or at a minimum as someone who had been riding in the car with the cellphone user while the latter supervised the transfer of drugs and engaged in incriminating conversations. In either case, a person of "reasonable caution" would at that point have ample grounds to believe that Carranza was culpably involved in the narcotics conspiracy that the agents had watched unfold.[2] Carranza's arrest, the search of his person and automobile, and his interrogation while in custody were therefore supported by probable cause and entirely lawful, and there is no basis

---

[2] Because the initial stop of the vehicle was insufficiently intrusive to require probable cause, and because the agents had probable cause to arrest Carranza before proceeding further, it is unnecessary to decide whether the information known to the agents when the car was stopped constituted probable cause.

## CONCLUSION

For the foregoing reasons, Carranza's motion to suppress evidence obtained as a result of

his arrest is denied.

SO ORDERED.

Dated: New York, New York
       March 4, 2009

GERARD E. LYNCH
United States District Judge